DAVID E. HARRIS (Bar No. 161334)
MILLER STARR REGALIA
A Professional Law Corporation
1331 N. California Blvd., Fifth Floor
Post Office Box 8177
Walnut Creek, California 94596
Telephone: 925 935 9400

Attorneys for Defendants
NL, INC., and JOE POLIZZI,

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TIMOTHY WALSH and JASBIR WALSH,<br><br>Plaintiff,<br><br>v.<br><br>COUNTRYWIDE HOME LOANS, INC.; COUNTRYWIDE BANK, FSB; SHAPELL INDUSTRIES, INC.; NL, INC.; RESIDENTIAL PACIFIC MORTGAGE; BRETT HILLARD, an individual; JOHN LUEDMANN, an individual; JOE POLIZZI, an individual; ALL PERSONS UNKNOWN, CLAIMING ANY LEGAL OR EQUITABLE INTEREST IN THE PROPERTY DESCRIBED IN THE COMPLAINT ADVERSE TO PLAINTIFFS' TITLE OR ANY CLOUD ON THAT TITLE and DOES 1 through 25, inclusive,<br><br>Defendants. | No: CV 09 0446 SBA<br><br>DEFENDANTS' NL, INC. AND JOE POLIZZI'S NOTICE OF MOTION AND MOTION OF MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF (FRCP 12(b)(6))<br><br>Date: April 7, 2009<br>Time: 1:00 p.m.<br>Dept: Courtroom 3 |

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION AND SUMMARY OF ARGUMENT ................................................. 1

II. FACTUAL ALLEGATIONS OF THE FAC ............................................................... 1

III. LEGAL DISCUSSION ............................................................................................. 6

    A. The FAC Fails To State A Claim As To RPM ................................................. 6

    B. Plaintiffs' Attempt To Portray The Note As Misleading Is A Sham ................ 7

    C. Plaintiffs Have Not Alleged A Comprehensible Claim Of Unconscionability ................................................................................................ 8

    D. Any Claim Under TILA, RICO, Or 17200 Is Barred By The Statute Of Limitations ................................................................................................ 9

    E. Plaintiffs' RICO Claim Is Frivolous ............................................................... 10

    F. The Complaint Fails To State A Quiet Title Claim Because It Is Not Verified ................................................................................................ 10

IV. CONCLUSION ...................................................................................................... 11

TABLE OF AUTHORITIES
(continued)

| | Page(s) |
|---|---|
| 15 U.S.C. Section 1640(e) | 9 |
| 19 U.S.C.A. Section 1962 | 10 |
| Business and Professions Code | |
|    Section 17200 | 4, 5, 7, 9 |
|    Section 17208 | 9 |
| California Code of Civil Procedure section 761.020 | 10 |
| Civil Code | |
|    Section 2954.9 | 8 |
|    Section 12670.5 | 5 |
| Federal Rules of Procedure, Rule 12(b) | 6 |
| Financial Code Section 22302 | 5 |

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Advanced Cardiovascular Systems, Inc. v. Scimed Life Systems, Inc.*,
  988 F.2d 1157 (1993).................................................................................................6

*Genty v. Resolution Trust Corp.*,
  937 F.2d 899 (3d. Cir. 1991).....................................................................................10

*In re Colonial Mortgage Bankers Corp.*
  324 F.3d 12 (1st Cir. 2003).........................................................................................6

*Ingle v. Circuit City Stores, Inc.*,
  328 F.3d 1165 (C.A.9 (Cal.), 2003)............................................................................8

*Karl Storz Endoscopy America, Inc. v. Surgical Technologies, Inc.*,
  285 F.3d 848 (9th Cir. 2002).......................................................................................9

*Lewis v. Superior Court*,
  30 Cal.App.4th 1850 (2d Dist., 1994).......................................................................11

*Medimatch, Inc. v. Lucent Technologies*,
  120 F.Supp.2d 842 (N.D. Cal. 2000)..........................................................................9

*Meyer v. Ameriquest Mortgage Co.*,
  342 F.3d 899 (9th Cir.2003)........................................................................................9

*Miller v. Gain Financial, Inc.*,
  995 F.2d 706 (7th Cir. 1993).....................................................................................10

*Puentes v. Wells Fargo Home Mortg., Inc.*,
  160 Cal.App.4th 638 (4th Dist., 2008).......................................................................8

*Rotella v. Wood*,
  528 U.S. 549, 120 S.Ct. 1075 (2000)..........................................................................9

*Shadoan v. World Savings & Loan Assn.*,
  219 Cal.App.3d 97 (1st Dist., 1990)...........................................................................9

*Stutz Motor Car of America, Inc. v. Reebok Intern., Ltd.*,
  909 F.Supp. 1353 (C.C. 1995).....................................................................................9

*Wayne v. Staples, Inc.*,
  135 Cal.App.4th 466, 37 Cal.Rptr.3d 544 (2d Dist., 2006) .......................................9

**STATUTES**

12 C.F.R.
  Section 226.17.............................................................................................................2
  Section 226.19.............................................................................................................2

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on April 7, 2009, at 1:00 p.m., in Courtroom 3 of the above-entitled Court, Defendants N.L., INC., a California corporation dba Residential Pacific (erroneously sued separately as RESIDENTIAL PACIFIC MORTGAGE) (hereinafter "NL") and JOE POLIZZI, an individual ("Polizzi") (collectively "RPM") will and hereby do move the Court for an order dismissing the First Amended Complaint for, *inter alia*, Quiet Title (hereinafter "FAC") filed by Plaintiffs TIMOTHY WALSH and JASBIR WALSH (collectively "Plaintiffs" or "the Walshes").

The grounds for this motion are that the FAC fails to state a claim upon which relief can be granted against RPM.

The motion is based on this notice of motion and motion, on the accompanying memorandum of points and authorities attached hereto, and upon such other and further matters, pleadings, and evidence as the Court deems appropriate to consider at the hearing of this motion.

Dated: February 6, 2009

MILLER STARR REGALIA

By: _____
DAVID E. HARRIS
Attorneys for Defendants
NL, INC. and JOE POLIZZI

I.   **INTRODUCTION AND SUMMARY OF ARGUMENT**

RPM requests that the Court dismiss the Complaint of Plaintiffs TIMOTHY WALSH and JASBIR WALSH (collectively "Plaintiffs" or "the Walshes") on the grounds that the FAC fails to state a claim upon which relief can be granted.

The FAC appears to be a malicious attempt to blame anyone and everyone for whatever financial troubles the plaintiffs claim to have. The FAC contains no meaningful charging allegations against RPM. The FAC alleges that the Walshes obtained a loan from RPM in November 2004, *which they retired through a refinance in March 2007*. The refinance was obtained by the Walshes directly from defendants COUNTRYWIDE HOME LOANS, INC. and COUNTRYWIDE BANK, FSB (collectively "Countrywide"). While the FAC attempts to allege various acts of wrongdoing in connection with the *refinance*[1], nowhere do plaintiffs complain that anything was wrong with the original loan, or that they suffered any harm as a result thereof (nor could they allege such wrongdoing or harm since they refinanced the original loan nearly two years ago and are now in the midst of a fixed loan). Plaintiffs' quiet title action is also defective because the subject complaint is not verified. Plaintiffs' inclusion of RPM in the FAC appears to be a scattergun approach at best and malicious at worst. Plaintiffs have failed to state a claim upon which relief can be granted and their FAC should be dismissed as to RPM.

II.   **FACTUAL ALLEGATIONS OF THE FAC**

The FAC alleges that the Walshes are the owners of real property located at 4530 Lilac Ridge Road, San Ramon, California ("the Property"). (FAC at ¶1.) The FAC alleges that the Walshes purchased the Property from defendant SHAPELL INDUSTRIES, INC. ("Shapell") in September 2004. (FAC at ¶12.) Although Shapell provided in-house loan services, it "steered" the Walshes to RPM. (FAC at ¶13.) RPM loaned Plaintiffs "the original purchase money of $1,462,500.00 to buy the Property through their DBA, Residential Pacific Mortgage, Inc. and took back a deed of trust as security for the loan."[2] (FAC at ¶15.) RPM assigned the note and deed of trust to Countrywide on January 3, 2005, after which Countrywide serviced the

---

[1] Given the boilerplate allegations, it would appear that the FAC was written by some sort of foreclosure avoidance agency.
[2] For some reason, plaintiffs named Residential Pacific Mortgage as a defendant, which is not an entity, but rather a dba of NL.

loan. (FAC at ¶¶16-17.) "On or about March 9, 2007, Plaintiffs refinanced the loan with Countrywide Bank with a loan in the amount of $1,566,000.00 (Refinance Loan) and took back a Deed of Trust as security for the debt." (FAC at ¶18.)

The FAC alleges that the Quiet Title action arises from violations of the Truth In Lending Act, RICO violations, and unfair competition and other unspecified statutory and common law. (FAC at ¶19.) The FAC alleges that the action is based on "Defendants' individual failure to clearly and conspicuously disclose terms to Plaintiffs in Defendants' Option Adjustable Rate Mortgage ("ARM") and other loan documents, failure to timely provide the required disclosure statements, [sic] accompanying the loans, (i) failure to timely disclose the actual interest rate on the Note (12 C.F.R. Section 226.17); (2) failure to timely disclose that payments on the Note at the teaser rate would increase (12 C.F.R. Section 226.19); failure to timely disclose that the initial interest rate provided was discounted and did not reflect the actual interest that Plaintiffs would be paying on the Note; and that (iv) Plaintiffs were not qualified to obtain the loan." (FAC at ¶20.) The FAC also alleges that the allegations are against defendants as a group for their "association in an enterprise coordinated through a pattern of racketeering activity to obtain money from plaintiffs and injure them using the interstate commerce and the United States Mail in violation of [RICO]." (FAC at ¶21.)

The First Cause of Action for Quiet Title, alleged only against Countrywide and persons unknown claiming an interest in the Property, alleges that plaintiffs own the Property via grant deed (FAC at ¶¶23-24 and Exhibits "A" and "B" attached thereto.) The FAC realleges the original promissory note (home equity line of credit for $1,462,500.00) and deed of trust from RPM. (FAC at ¶¶25-26 and Exhibits "C" and "D" attached thereto.) The Promissory Note at Exhibit "C" provides at the top of page 1:

> **THIS NOTE CONTAINS PROVISIONS THAT WILL CHANGE THE INTEREST RATE AND THE MONTHLY PAYMENT. THERE MAY BE A LIMIT ON THE AMOUNT THAT THE MONTHLY PAYMENT CAN INCREASE OR DECREASE. THE PRINCIPAL AMOUNT TO REPAY COULD BE GREATER THAN THE AMOUNT ORIGINALLY BORROWED, BUT NOT MORE THAN THE LIMIT STATED IN THIS NOTE.** (Exhibit "C" to FAC, bold and capitalization original.)

| | |
|---|---|
| 1 | The Promissory Note provides for an initial interest rate of 1% and states that "The |
| 2 | interest rate I will pay may change." (Exhibit "C" to FAC at p.1, ¶2.) The Promissory Note |
| 3 | again states that the interest rate may change beginning January 1, 2005 and on the first of every |
| 4 | month thereafter, and describes the index formula for determining the rate change and setting a |
| 5 | maximum interest rate of 9.950%. (*Id.*) The Promissory Note provides the amount of the initial |
| 6 | payment at $4,703.98 per month and again notes that this may change. (*Id.* at pp. 1-2, ¶3.) The |
| 7 | Promissory Note again explains that the principal balance on the note could increase, to a |
| 8 | maximum of 115% of the original principal. (*Id.*) |
| 9 | The FAC alleges that RPM assigned the servicing of the original note to |
| 10 | Countrywide in February 2005. (FAC at ¶27.) The original deed of trust was not reassigned. |
| 11 | (FAC at ¶28.) The FAC alleges that the original note was assigned by Countrywide to unknown |
| 12 | third parties who now have an interest in the Property, and the note was securitized, which |
| 13 | "severed" the note and deed of trust. (FAC at ¶¶29-32.) |
| 14 | The FAC alleges that plaintiffs "refinanced the previous loan with Bank. Plaintiffs |
| 15 | signed a Note for an interest only adjustable rate loan for $1,566,000.00 as evidenced at |
| 16 | Exhibit "E." (FAC at ¶33 and Exhibit "E" attached thereto.) The FAC alleges that the new note |
| 17 | was assigned to unknown third parties who now have an interest in the Property along with |
| 18 | Countrywide, and the note was securitized, which "severed" the note and deed of trust. (FAC at |
| 19 | ¶¶34-40.) The FAC alleges that plaintiffs "rescind the loan with Countrywide and thereby severe |
| 20 | [sic] the Note from the Deed of Trust." (FAC at ¶41.) Plaintiffs seek to quiet title as of |
| 21 | November 13, 2008. (FAC at ¶42.) |
| 22 | The Second Cause of Action alleges violations of the Truth in Lending Act |
| 23 | ("TILA"). The FAC purports to allege the purposes and requirements of TILA (FAC at ¶¶46-48). |
| 24 | The FAC alleges that "Defendant Countrywide's option ARM loan violates TILA" based on |
| 25 | alleged failures to disclose "the terms of the Option ARM loan to Plaintiffs as was required under |
| 26 | TILA." (FAC at ¶49.) The alleged non-disclosures include the actual interest rate charged by |
| 27 | Countrywide (FAC at ¶50(a)), the interest rate in Countrywide's note (FAC at ¶50(b)-(c)), and |
| 28 | whether the note was a 30 or 40 year amortized loan (FAC at ¶50(c).) The FAC alleges: |

>Plaintiff alleges that at all times mentioned herein, Countrywide and Countrywide Bank failed to clearly, conspicuously, and accurate disclose the actual interest rate applied to Plaintiff's [sic] loan, and the actual amortized term of the loan. Defendants also failed to disclose that the payment amounts would be insufficient to pay the loan within the specified 30 year term, in that the loan was in fact structured on the basis of a 40 year term, which would force plaintiff to pay a sizeable balance of the loan at the 30th year of the loan. The disclosures must inform the borrower what the true cost of the loan is. (FAC at ¶51.)

The FAC alleges the importance of the various disclosures and purports to allege the required contents and form of such disclosures. (FAC at ¶¶52-56.) The FAC alleges that "Countrywide states only that the interest rate may increase in the future" when the interest rate was guaranteed to go up in the future. (FAC at ¶57.) The FAC alleges that "the loan Note dated March 9, 2007 is ambiguous ..." (FAC at ¶58.) The FAC repeats that "Countrywide's loan documents state that the interest rate may increase during the term of this transaction if the index increases," and explains that the rate would increase because it was discounted and was sure to increase. (FAC at ¶¶59-60.) The FAC alleges that "Countrywide provided Plaintiff with multiple, conflicting interest rates when describing the costs of the loan. (FAC at ¶61.) The FAC alleges that "[b]ecause Countrywide failed to clearly and conspicuously identify which of the many interest rates indicated by it is the composite interest rate, instead listing different rates in different places in the documents provided Plaintiff, Countrywide violated TILA and Regulation Z, and failed to provide disclosures that did not obscure relevant information. (FAC at ¶62.) Paragraph 63 alleges that as a result of "Countrywide's violations of TILA as alleged herein," plaintiffs suffered damages, and alleges that if "Countrywide had not violated TILA and had instead clearly and conspicuously disclosed the material terms of the option ARM loan, plaintiffs would not have entered into the home loan contract with Countrywide. Because Countrywide failed to make the proper disclosures required under TILA, Plaintiff now seeks redress in an amount and/or type as proven at time of trial." (FAC at ¶63.)

The Third Cause of Action alleges unfair business practices and asserts that defendants violated Business and Professions Code section 17200 as a result of the "unlawful acts and practices of Defendants alleged above ..." (FAC at ¶¶65-73.) No acts of NL are alleged.

The Fourth Cause of Action also alleges unfair business practices and alleges that defendants "extended the loan to Plaintiffs on stated income only, without requiring further verification of Plaintiff's ability to repay the loan, knowing that plaintiff would not be able to repay the loan." (FAC at ¶76.)[3] The Fifth Cause of Action alleges fraudulent omission, again asserting that "Plaintiffs could not and would not qualify for the subject loan," and that defendants "eventually foreclose on the subject Property." (FAC at ¶¶85-86.) The Sixth Cause of Action cites a third violation of B&P § 17200, alleging that the loan contracts prepared by Najarian and Countrywide were unconscionable in violation of Financial Code section 22302 because they violated Civil Code section 12670.5, including a prepayment penalty, but then alleges that "Countrywide's option ARM loan contract is unconscionable [pursuant to those statutes]." (FAC at ¶¶93-106.)[4] The Seventh Cause of Action alleges rescission of the Countrywide loan based on fraud. (FAC at ¶108-113.) The Eighth Cause of Action alleges breach of fiduciary duty "by failing to provide Plaintiffs with the disclosure notices required pursuant to TILA, and to inform them that they could not qualify for the option ARM loan. (FAC at ¶¶115-116.) The Ninth Cause of Action alleges breach of the implied covenant of good faith and fair dealing based on the same conduct. (FAC at ¶¶118-120.) The Tenth Cause of Action alleges RICO violations for conspiring to "steer Plaintiffs to Defendants' own broker, sales representative, lender and mortgage company by which they induced Plaintiffs to enter into a loan contract by using unfair business practices, undue influence, and fraud," and again allege the same nondisclosure as alleged above. (FAC at ¶¶122-124.) The Eleventh Cause of Action seeks declaratory relief that the Countrywide note is void, that a non-judicial foreclosure based thereon would be improper, and that the refinance is subject to rescission. (FAC at ¶¶126-130.)

---

[3] Plaintiffs thus seem to be alleging that defendants knew that plaintiffs lied about their income. NL is not mentioned by name, but the allegation cannot apply to NL since the original loan was repaid, thus refuting any allegation of knowledge that it could not be repaid. Oddly, plaintiffs allege that defendants knew that plaintiffs could not qualify for a loan for which plaintiffs did qualify.

[4] The RPM loan did not contain any prepayment penalty. See Exhibit "C" at ¶5, "I may make a full Prepayment or partial Prepayments without paying any Prepayment charge."

## III. **LEGAL DISCUSSION**

### A. **The FAC Fails To State A Claim As To RPM**

Federal Rules of Procedure, Rule 12(b) provides in relevant part:

Every defense to a claim for relief in any pleading must be asserted in the responsive pleading if one is required. But a party may assert the following defenses by motion: ... (6) failure to state a claim upon which relief can be granted....

The purpose of the rule is to "is to allow the court to eliminate actions that are fatally flawed in their legal premises and destined to fail, and thus to spare litigants the burdens of unnecessary pretrial and trial activity." (*Advanced Cardiovascular Systems, Inc. v. Scimed Life Systems, Inc.*, 988 F.2d 1157, 1160 (1993).) Although factual allegations are assumed to be true, the court is not bound "to credit bald assertions, unsupportable conclusions, and opprobrious epithets" woven into the fabric of the complaint." (*In re Colonial Mortgage Bankers Corp.* 324 F.3d 12, 15 (1st Cir. 2003). "These principles require us to consider not only the complaint but also matters fairly incorporated within it and matters susceptible to judicial notice." (*Id.*)

The FAC is devoid of any meaningful charging allegations against RPM. In the 22-page, 130-paragraph complaint, Polizzi is mentioned: in the caption; at paragraph 9 to identify him as a vice president of RPM and a California resident; and in paragraph 20 as one of the defendants being sued. He is not mention anywhere else. NL, Inc. is similarly mentioned in the caption and at paragraph 5, identifying it as a California corporation doing business in Walnut Creek, and again in paragraphs 15, 20, and 25-28 with respect to the original note and deed of trust (which were rendered moot by the refinance with Countrywide). NL, Inc. is mentioned only once more, at paragraph 97 when plaintiff alleges the original loan was unconscionable (but discusses only the Countrywide loan in describing the alleged shortcomings).

The First Cause of Action does not include RPM. The Second Cause of Action asserts TILA violations but alleges such violations only with respect to the Countrywide ARM loan. The Third Cause of Action incorporates allegations of the second and adds nothing new. The Fourth Cause of Action alleges that defendants wrongfully extended credit without verifying income (in other words, plaintiffs apparently lied on their applications and want to blame

defendants for accepting the lie), and alleges that defendants knew that plaintiffs could not repay the loan. By plaintiffs' own admission, however, they *did* repay the RPM loan.

The same allegation is repeated in the Fifth Cause of Action for fraud. The Sixth Cause of Action alleges unconscionability against Countrywide based on a prepayment clause, which is not unconscionable as a matter of law *and which is not a term of the RPM loan.* The Seventh Cause of Action seeks rescission of the Countrywide loan and does not involve RPM. The Eighth, Ninth, and Tenth Causes of Action add no new allegations of wrongdoing. The Tenth Cause of Action claims a RICO violation for steering plaintiffs' to defendants' own broker, but plaintiffs admit that they did not use RPM for the second loan, instead going directly to Countrywide (why this would be a RICO violation in any case is not remotely explained). The Eleventh Cause of Action seeks declaratory relief only as to the Countrywide loan.

Even ignoring the frivolous and nonsensical character of the charging allegations as to *any* defendant, it is patent that plaintiffs have named RPM maliciously, and have not, and cannot, state any claim against RPM. The original note was, by plaintiffs' own admission, completely refinanced, thus refuting the nonsensical allegation that plaintiffs could not repay or qualify for the loan, or that RPM is responsible for the loss of any equity or foreclosure. There is no evidence or allegation of any misleading information or lack of disclosure with respect to the original loan (all of the TILA/Regulation Z claims are directed at the Countrywide loan). Plaintiffs' claims that they were somehow misled into a "stated income" loan are frivolous given that the only difference between a "stated income" and full document loan is that plaintiffs' income is not verified, which means that it only makes a difference if plaintiffs lied about their own income. Such an allegation is, at best, ironic.

**B.  Plaintiffs' Attempt To Portray The Note As Misleading Is A Sham**

Plaintiffs do not make any allegation that the RPM note was in any way misleading or otherwise violative of TILA or the unfair competition statutes. Both the RPM note and the Countrywide note contained the disclosures required by TILA, including the use of an index and the description of interest fluctuations required by TILA. This bars an action under both TILA and section 17200. "When the Legislature has permitted certain conduct, courts may

1 not override that determination' by declaring such conduct to be actionable under section 17200."
2 (*Puentes v. Wells Fargo Home Mortg., Inc.*, 160 Cal.App.4th 638, 644 (4th Dist., 2008).)
3 Moreover, in order to be actionable under section 17200, the conduct must be unlawful, unfair, or
4 fraudulent. (*Id.*) The subject notes are neither.

5       Plaintiffs completely misstate the Countrywide note, claiming that it is a variable
6 interest Option ARM loan when in fact the interest is fixed for seven years. Plaintiffs also
7 attempt to create an ambiguity as to the Countrywide note by claiming that it was misleading as to
8 the length of time that the interest rate would be fixed (seven years or ten), but even assuming that
9 an ambiguity could be found, it would be irrelevant. Neither time has yet run, so any injury that
10 could possibly occur could not have occurred yet or contributed to plaintiffs' apparently
11 impending default. Plaintiffs claim that it was a "certainty" that the interest rate would rise, but
12 do not allege that it did (since plaintiffs simultaneously claim that the rate was fixed for at least
13 seven years, plaintiffs cannot allege that the interest rate rose). The subject notes plainly provide
14 for changes in the interest and monthly payment with limits as to how much it can increase or
15 decrease, the number of changes that can occur, and provide a detailed explanation and
16 identification of the index and margin which control the rate changes. The notes comply with all
17 Federal and state laws and plaintiffs' claims must be dismissed.

18       **C.**    **Plaintiffs Have Not Alleged A Comprehensible Claim Of**
19 **Unconscionability**

20       "Unconscionability refers to an absence of meaningful choice on the part of
21 one of the parties together with contract terms which are unreasonably favorable to the other
22 party. Thus, a contract to arbitrate is unenforceable under the doctrine of unconscionability when
23 there is "both a procedural and substantive element of unconscionability." (*Ingle v. Circuit City*
24 *Stores, Inc.*, 328 F.3d 1165, 1170 (C.A.9 (Cal.), 2003).) While plaintiffs allege a lack of
25 meaningful choice, the only unfavorable terms it alleges in the Countrywide note is a prepayment
26 penalty. There is nothing unconscionable about a prepayment penalty in a residential mortgage
27 loan, which is specifically authorized by statute. "Unilateral call and prepayment penalty
28 provisions are legislatively recognized and sanctioned. Civil Code section 2954.9 specifically

authorizes prepayment penalties on residential property of four units or less." (*Shadoan v. World Savings & Loan Assn.*, 219 Cal.App.3d 97, 104 (1st Dist., 1990).) "With a concept as nebulous as "unconscionability" it is important that courts not be thrust in the paternalistic role of intervening to change contractual terms that the parties have agreed to merely because the court believes the terms are unreasonable. The terms must shock the conscience." (*Wayne v. Staples, Inc.*, 135 Cal.App.4th 466, 483, 37 Cal.Rptr.3d 544, 557 (2d Dist., 2006).) Here, plaintiffs allege only that there would be a cost associated with prepayment.

More importantly, the RPM loan did not even contain a prepayment penalty. (See Exhibit "C" to FAC at ¶5, borrower's right to prepay without a charge.)

### D. Any Claim Under TILA, RICO, Or 17200 Is Barred By The Statute Of Limitations

"Pursuant to 15 U.S.C. § 1640(e), a claim for damages under TILA must be commenced within one year following the date of the alleged violation. The date of the violation refers to the date the loan documents were signed." *Lynch v. RKS Mortg. Inc.*, 2008 WL 5061616, 4 (E.D. Cal., 2008), *citing Meyer v. Ameriquest Mortgage Co.*, 342 F.3d 899, 902 (9th Cir.2003). Exhibit "C" to the FAC demonstrates that plaintiffs entered into their loan with RPM on November 4, 2004. The FAC was filed in December 2008, more than three years too late. Plaintiffs' TILA claims are thus barred by the statute of limitations.

Plaintiffs' unfair competition claims are also barred. Business and Professions Code section 17208 requires a claim for unfair competition to be brought within four years of accrual of a cause of action. The "discovery rule" does not apply to unfair competition claims. (*Stutz Motor Car of America, Inc. v. Reebok Intern., Ltd.*, 909 F.Supp. 1353, 1363 (C.C. 1995); *Karl Storz Endoscopy America, Inc. v. Surgical Technologies, Inc.*, 285 F.3d 848, 857 (9th Cir. 2002); *Medimatch, Inc. v. Lucent Technologies*, 120 F.Supp.2d 842 (N.D. Cal. 2000).) Here, any alleged violation occurred, at the latest, at execution of the promissory note, four years and one month prior to the filing of the lawsuit, and any 17200 claims are likewise barred. Civil RICO claims are also subject to a four-year statute of limitations which is not subject to the delayed discovery rule. (*Rotella v. Wood*, 528 U.S. 549, 558; 120 S.Ct. 1075, 1088 (2000).)

### E.     Plaintiffs' RICO Claim Is Frivolous

"Imposition of civil RICO liability thus requires the existence of a "person" engaged in racketeering as well as an "enterprise" through which the illegal conduct occurs." (*Genty v. Resolution Trust Corp.*, 937 F.2d 899, 906 -907 (3d. Cir. 1991).) "Examples of racketeering activity (referred to as predicate offenses) include state felonies punishable by imprisonment of more than a year such as murder, kidnapping, gambling or extortion, as well as more than thirty federal crimes, such as drug offenses, obstruction of justice, obscenity, and mail, wire, bankruptcy, and securities fraud." (*Id.*) "Congress intended RICO's civil remedies to help eradicate organized crime from the social fabric by divesting the association of the fruits of ill-gotten gains." (*Id.*, internal cite and quotes omitted.) Plaintiffs claim a RICO violation by claiming that Shapell "steered" plaintiffs to Shapell's own agent in order to induce plaintiffs to enter into an unfair loan contract which they are "certain to default on."

Plaintiffs have not explained how the RPM loan, which plaintiffs repaid in full, was unfair or unlawful, and since plaintiffs refer to a loan on which they are certain to default, presumably plaintiffs are referring to the Countrywide loan. In any case, RICO has no application here. The RICO statute imposes liability if defendant profits "from a pattern of racketeering activity or through collection of an unlawful debt ..." (19 U.S.C.A. § 1962.) Plaintiffs have not alleged a pattern of anything. Moreover, the FAC alleges that RPM assigned the servicing of the loan within two months of its inception. "To establish a pattern of fraudulent acts, and thus, continuity, a plaintiff must demonstrate that there has been a series of related predicate acts over a substantial period of time or ones which threaten repetition in the future. Acts which last only a few weeks or months and do not threaten continuation in the future do not satisfy the RICO continuity requirement." (*Miller v. Gain Financial, Inc.*, 995 F.2d 706, 708-709 (7th Cir. 1993).) For an entire host of reasons, RICO has no application to the present case.

### F.     The Complaint Fails To State A Quiet Title Claim Because It Is Not Verified.

California Code of Civil Procedure section 761.020 requires that a complaint to quiet title be verified. A plaintiff without a verified complaint has no claim to quiet title. (*Lewis*

1 | *v. Superior Court*, 30 Cal.App.4th 1850, 1866 (2d Dist., 1994).) The FAC must be dismissed on
2 | this independent ground as well.

### IV. CONCLUSION

It is evident that plaintiffs have attempted to muster some sort of claim because they were unable or unwilling to honor their financial obligations and now hope to delay or avoid foreclosure, none of which is relevant to RPM. Plaintiffs borrowed money from RPM and repaid it. There is not, nor can there be, any allegation that the RPM loan was in any way improper. RPM therefore requests that the motion to dismiss be granted.

Dated: February 6, 2009

MILLER STARR REGALIA

By: /s/ David E. Harris
DAVID E. HARRIS
Attorneys for Defendants
Attorneys for Defendants
NL, INC. and JOE POLIZZI