| | |
|---|---|
| 1 | DAVID E. HARRIS (Bar No. 161334) |
| 2 | MILLER STARR REGALIA<br>A Professional Law Corporation |
| 3 | 1331 N. California Blvd., Fifth Floor<br>Post Office Box 8177 |
| 4 | Walnut Creek, California 94596<br>Telephone:   925 935 9400 |
| 5 | Attorneys for Defendants |
| 6 | NL, INC., and JOE POLIZZI, |

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TIMOTHY WALSH and JASBIR WALSH, | No: CV 09 0446 SBA |
| Plaintiff, | DEFENDANTS' NL, INC. AND JOE POLIZZI'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED |
| v. | (FRCP 12(b)(6)) |
| COUNTRYWIDE HOME LOANS, INC.; COUNTRYWIDE BANK, FSB; SHAPELL INDUSTRIES, INC.; NL, INC.; RESIDENTIAL PACIFIC MORTGAGE; BRETT HILLARD, an individual; JOHN LUEDMANN, an individual; JOE POLIZZI, an individual; ALL PERSONS UNKNOWN, CLAIMING ANY LEGAL OR EQUITABLE INTEREST IN THE PROPERTY DESCRIBED IN THE COMPLAINT ADVERSE TO PLAINTIFFS' TITLE OR ANY CLOUD ON THAT TITLE and DOES 1 through 25, inclusive, | Date:   April 7, 2009<br>Time:   1:00 p.m.<br>Dept:   Courtroom 3 |
| Defendants. | |

Plaintiffs TIMOTHY WALSH and JASBIR WALSH (collectively "Plaintiffs" or "the Walshes"), after refusing to meet and confer regarding defendants' motions to dismiss, now concede that the motions are all meritorious, thereby admitting that they have needlessly forced defendants to waste thousands of dollars. Indeed, their own attorneys' e-mails make it clear that this is plaintiffs' intent. The Walshes do not oppose defendants N.L., INC.'s and JOE POLIZZI's (collectively "NL") motion, or that of any other defendant, on any substantive grounds. Rather, they now admit that the complaint fails to state a cause of action.

The Walshes have blithely informed the Court that they intend to amend, without having made any motion to do so, without supplying a copy of the proposed amendment or any reasonable summary of its proposed contents, and without any explanation as to how the proposed amendment will cure any of the defects in the complaint. The defects are *not* curable, and any amendment would be futile. For one thing, no cause of action could revive any claim in favor of the Walshes against NL because all such claims are hopelessly barred by the applicable statutes of limitation. The Court should grant NL's motion to dismiss without leave to amend, as there is no opposition and no motion to amend. At minimum, if the Court is inclined to grant leave to amend, it should do so only on condition that the Walshes pay to defendants the cost of having to bring motions to dismiss that could have been avoided had the Walshes honored their obligation to meet and confer.

I.   **CONTRARY TO PLAINTIFFS' PAPERS, THEY HAVE NEVER MET AND CONFERRED CONCERNING THE MOTIONS TO DISMISS**

In their papers, plaintiffs claim that the parties met and conferred to discuss defendants' motions to dismiss on March 17, 2009. That is incorrect. Plaintiffs flatly refused to meet and confer concerning the motion to dismiss. Plaintiffs belatedly offered to meet and confer regarding a proposed motion to amend that has never been filed, demanding that defendants stipulate to an amendment without providing a copy or a detailed explanation of its contents or how it would cure the defects in the complaint that plaintiffs now concede.

The e-mails attached to the accompanying declaration of David E. Harris confirm that defendants contacted plaintiffs and their prospective counsel numerous times *before* filing the

motions to dismiss. *Plaintiffs flatly refused to meet and confer at any time.* The chronology is as follows:

- On or about January 17, 2009, counsel for NL wrote directly to the Walshes, pointing out that the alleged non-disclosure described in the complaint related to solely to another defendant, that NL's loan had been repaid and its deed of trust reconveyed long ago, and that the complaint, which contained no allegations of wrongdoing as to NL, should be dismissed (Ex. "A" to Harris Decl.). Plaintiffs did not respond.

- On January 19, 2009, counsel for NL telephoned Mr. Walsh, but Mr. Walsh would not discuss the matter other than to say he was hiring an attorney and would have her call. No one called. (Harris Decl. at ¶3.)

- On February 4, 2009, counsel for NL wrote to Mr. Walsh requesting that he meet and confer, or dismiss the matter. (Ex. "B.")

- Mr. Walsh responded the same day, claiming counsel had only tried to meet and confer once since removing the case to federal court, and providing the contact information for his attorney. (Ex. "C".)

- NL's counsel wrote to the Walshes' claimed attorney, Lyndsey Heller, the same day (the first day her name and contact information were provided) requesting that she meet and confer prior to the February 6 filing deadline. (Ex. "D").

- Ms. Heller, who was not yet the attorney of record for the Walshes, responded on February 5, 2009, stating that she did not yet have the complaint and that she did not have time to meet and confer prior to the filing deadline, that "last minute" notice was not sufficient, and suggesting a meet and confer in March. (Ex. "E.") Counsel for NL responded the same day, noting that the meet and confer was "last minute" only because Mr. Walsh refused to discuss the matter. (Ex. "F.") Ms. Heller responded that night claiming she had just learned that the matter was removed to

|   |   |
|---|---|
| 1 | Federal court, and that she would have time to meet and confer the |
| 2 | following week. (Ex. "G.") |
| 3 | • On Friday, February 6, counsel for NL wrote to Ms. Heller |
| 4 | stating that NL, having been forced to waste money on a motion to dismiss, |
| 5 | would seek Rule 11 sanctions. (Exhibit "H.") |
| 6 | • Also on February 6, 2009, Mr. Walsh wrote directly to |
| 7 | counsel stating that he would dismiss the complaint; the same day, counsel |
| 8 | requested permission to communicate with plaintiff directly (since Ms. |
| 9 | Heller was representing him) and asked that the dismissal be confirmed by |
| 10 | 1:00 p.m. or, alternatively, that plaintiffs extend the filing deadline. (Ex. |
| 11 | "I.") Neither occurred. |
| 12 | • Later on February 6, 2009, Ms. Heller wrote to counsel for |
| 13 | NL, stating that plaintiff would not be dismissing, and stating that she |
| 14 | would prepare her substitution of attorney form on Monday (February 9), |
| 15 | and asking for dates to meet and confer. (Ex. "J.") Defense counsel agreed |
| 16 | to meet on confer on Monday, but Ms. Heller declined, stating that she was |
| 17 | too busy, and suggested February 12. Counsel for Countrywide was |
| 18 | unavailable, and Ms. Heller was unwilling to commit to another date that |
| 19 | week. (Ex. "K.") No further dates were discussed regarding meeting and |
| 20 | conferring regarding the dismissal motions. |
| 21 | • On March 10, 2009, Ms. Heller's office wrote to request a |
| 22 | stipulation to file an amended pleading and requested a meet and confer |
| 23 | prior to March 13, 2009, the date she would file "a motion for continuance |
| 24 | of the dismissal hearing and for leave to amend." (Ex. "L.") |
| 25 | • Counsel for Chappell stated that defense counsel had been |
| 26 | trying to meet and confer for weeks and were happy to do so. (Ex. "M.") |
| 27 | Counsel for NL requested a copy of the proposed amended pleading (Ex. |
| 28 |   |

"N"), but Ms. Heller refused (Ex. "O"), despite a further request and an explanation as to why a copy was needed ("Ex. "P").

- Ms. Heller responded with an extraordinary e-mail, in which she stated, *inter alia*: "It is too bad that your clients will be paying through the nose for this case. I can't believe that you would think you would walk away from this case without a very large amount of litigation costs and fees from your clients. That is the cost of litigation." (Ex. "Q.") She also stated: "Why on earth would I give you a copy of my amended complaint so you could see what I have to say prior to filing the documents with the court. It seems to me that anyone stupid enough to send a copy of a completely amended complaint prior to filing it has to be out of their minds. In all my years of litigating I have never heard anyone ask for a copy to make a decision. Hence, you are trying to see where my complaint is going and how I will be proceeding in defending my client, and have the ability to decide how you will respond prior to my submission of the document to the court. I DON"T THINK SO!" (*Id.*, emphasis original.) Finally, Ms. Heller stated: "You are right about one thing. I would not be filing a dismissal. I am going forward with this case with guns blazing. As for your clients, I do not care what it costs them to defend the lawsuit. That is your problem with your clients and please stop bringing it up to me. Again, that is the cost of litigation." (*Id.*)

- Ms. Heller later suggested dates to meet and confer regarding her motion to amend of March 12 and March 17; although all counsel agreed to March 12, Ms. Heller scheduled March 17 for the meet and confer (Ms. Heller later stated that she had not realized that she was busy on March 12). On March 11, 2009, Ms. Heller wrote to counsel stating: "I would like to have a meet and confer with you to discuss the possiblity of a stipulation for the Amended Complaint." (Ex. "R.")

## II. JUSTICE DOES NOT REQUIRE GRANTING AN AMENDMENT THAT HAS NOT BEEN PROPERLY REQUESTED

Rule 15 of the Federal Rules of Procedure provides that the Court should freely grant leave to amend where justice requires. However, a Court does not abuse its discretion where the plaintiff delays in bringing a motion to amend and where the granting of an amendment would be futile. (*Lipton v. Pathogenesis Corp.*, 284 F.3d 1027, 1039 (9th Cir. 2002); *Klamath-Lake Pharmaceutical Ass'n v. Klamath Med. Serv. Bureau*, 701 F.2d 1276, 1293 (9th Cir.1983).) "Leave to amend need not be given if a complaint, as amended, is subject to dismissal." (*Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531, 538 (9th Cir. 1989).)

Further, the Court's standing order provides:

> Any pleading or brief sought to be filed with the Court after the required time, or in an improper manner or form, shall not be received or considered by the Court. Any attorney in violation of such requirements will be subject to other sanctions. Civil L.R. 1-4. The failure of the opposing party to file a memorandum of points and authorities in opposition to any motion shall constitute a consent to the granting of the motion.

Here, plaintiffs did not oppose the motion to dismiss at all, but rather concede that the Quiet Title, TILA, RESPA, and Unfair Business Practices (at least partially) causes of action should be dismissed. Plaintiffs allege a new fraud claim based on an allegedly fraudulent application, breach of fiduciary duty claim, violation of Regulation Z (which is a part of TILA and would therefore be barred by the statute of limitations even if the claim, whatever it is, were true), unjust enrichment and elder abuse. The "opposition" does not remotely address how any of these claims would survive the dispositive issues raised in the motion to dismiss.

Under the totality of the circumstances, leave to amend should not be granted. Plaintiffs refused to meet and confer and forced defendants to waste thousands of dollars in fees, then conceded that the motions were meritorious. Plaintiffs waited until the last possible day, the day any opposition to the motions to dismiss were due, to even meet and confer concerning a proposed amendment, but refused to provide a copy of the proposed amendment or any reasonable description thereof, and utterly failed to explain why the proposed amendment would itself survive dismissal. Finally, plaintiffs' counsel's e-mails make abundantly clear that

---

plaintiffs' intent is to force defendants to incur attorney's fees, presumably to try to force settlement funds to dispose of a meritless case. The Court should exercise its discretion and grant the motion to dismiss without leave to amend.

### III. IF THE COURT IS INCLINED TO GRANT LEAVE TO AMEND, IT SHOULD CONDITION SUCH LEAVE ON THE PAYMENT OF REASONABLE ATTORNEY'S FEES INCURRED IN BRINGING THE MOTIONS TO DISMISS

The Ninth Circuit Court of Appeals has "held that a district court, in its discretion, may impose costs pursuant to Rule 15 as a condition of granting leave to amend in order to compensate the opposing party for additional costs incurred because the original pleading was faulty." (*General Signal Corp. v. MCI Telecommunications Corp.*, 66 F.3d 1500, 1514 (9th Cir. 1995), citing *Firchau v. Diamond Nat'l Corp.*, 345 F.2d 269, 275 (9th Cir.1965).) Here, plaintiffs not only failed to file adequate pleadings originally, they flatly refused to meet and confer, as is required by the Court, conceded that the motions were meritorious, failed to file a proper opposition, and failed to timely file a motion to amend. Finally, plaintiffs' counsel's letter reveals an utterly callous disregard for the costs incurred by defendants at best, and an attempt to extort settlement funds at worst. If the Court is inclined to grant leave to amend, it should impose as a condition of granting leave that plaintiffs pay defendants the reasonable cost of having had to oppose the motions in the first place.

Dated: March 24, 2009

MILLER STARR REGALIA

By: /s/ David E. Harris
DAVID E. HARRIS
Attorneys for Defendants
Attorneys for Defendants
NL, INC. and JOE POLIZZI